# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION
## CIVIL ACTION NO. 1:13CV-00134-HBB

**JADE A. JOHNSON**                                                                          **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                                     **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Jade A. Johnson ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff (DN 12) and Defendant (DN 13) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10).  By Order entered November 5, 2013 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.

<u>FINDINGS OF FACT</u>

Plaintiff protectively filed an application for Supplemental Security Income Benefits on November 17, 2009 (Tr. 45, 148-151, 152-155). Plaintiff alleged that she became disabled on September 2, 2009 as a result of bipolar disorder, inability to read or write or follow instructions, and inability to be around people (Tr. 45, 210). The claim was denied initially on May 19, 2010, and upon reconsideration on August 25, 2010 (Tr. 45). Thereafter, Plaintiff filed a written request for hearing on September 22, 2010 (Tr. 45). Administrative Law Judge James E. Craig ("ALJ") conducted a hearing on October 24, 2011 in Bowling Green, Kentucky (Tr. 45). Plaintiff was present and represented by Mary Burchett-Bower, an attorney (Tr. 45). Also present and testifying was Thomas Holcomb, Ed.D., an impartial vocational expert (Tr. 45).

In a decision dated November 3, 2011, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 46-55). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 17, 2009, the alleged onset date (Tr. 47). At the second step, the ALJ determined that Plaintiff's borderline intellectual functioning, depressive disorder, and an anxiety disorder with features of posttraumatic stress disorder and social anxiety are "severe" impairments within the meaning of the regulations (Tr. 47). Notably, at the second step, the ALJ also determined that Plaintiff does not have a severe physical impairment (Tr. 47). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 47).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> She is limited to simple, repetitive work (no detailed or complex work), which is thing-oriented. She can have no more than occasional, intermittent contact with co-workers and supervisors, but no contact with the public. Instructions should be given verbally. She should avoid fast paced or quota based work.

(Tr. 48). The ALJ also determined that Plaintiff has no past relevant work (Tr. 53).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 53-54). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 53). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from November 17, 2009 through November 3, 2011, the date of the decision (Tr. 55).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 23-26). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).

CONCLUSIONS OF LAW

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g);

Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serverices, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Services, 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

### Evaluation of Plaintiff's Impairments and Listings

Here, Plaintiff challenges the ALJ's Finding No. 3, which addresses the third step in the five-step sequential evaluation process promulgated by the Commissioner (DN 12, Plaintiff's Fact and Law Summary at Pages 2-8). At the third step, a claimant has the burden of demonstrating she has an impairment that meets or medically equals a listing in Appendix 1. *See*, 20 C.F.R. §§ 404.1520(d), 416.920(d); Burgess v. Sec'y of Health and Human Serv's., 835 F.2d 139, 140 (6th Cir. 1987). To meet a listing in Appendix 1, the medical records regarding the impairment must satisfy both the diagnosis and severity requirements for the listing. Social Security Ruling 96-5p; 20 C.F.R. §§ 404.1525(d), 416.925(d); Hale v. Sec'y of Health and Human Serv's., 816 F.2d 1078, 1083 (6th Cir. 1984). If the impairment does not meet the severity requirements of a listing, then the Administrative Law Judge looks to the opinions of the state agency medical advisors and/or the

opinion of a testifying medical expert for guidance on the issue of whether the medical findings are at least equal in severity and duration of the listing findings. 20 C.F.R. §§ 404.1526(a) and (b), 416.926(a) and (b); Social Security Ruling 96-5p; Deters v. Sec'y of Health, Educ and Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986). Since a finding that a claimant meets or equals a listing is dispositive of the case, the finding is reserved to the Administrative Law Judge. Social Security Ruling 96-5p.

The Sixth Circuit recognizes that "[a]t step three of the evaluation process, it is the burden of the claimant to show that he meets or equals the listed impairment." Thacker v. Soc. Sec. Admin., 93 F.App'x 725, 727-728 (6th Cir. 2004) (citing Burgess v. Sec'y of Health and Human Servs., 835 F.2d 139, 160 (6th Cir. 1987). "When a claimant alleges the meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." Thacker, 93 F.App'x at 728. It is insufficient for claimant to come "close to meeting the requirements of a listed impairment." Elam ex rel Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). Moreover, "[a]n impairment that manifests only some of those criteria, no matter how severe, does not qualify." See Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

With regard to Finding No. 3, the ALJ made the following finding:

> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(Tr. 47). Furthermore, the ALJ provided the following reasons for his finding:

> The undersigned finds the claimant's mental impairment has resulted in only mild difficulties in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in

concentration, persistence, or pace, and one or two episodes of decompensation, each of extended duration.

The "paragraph C' criteria of section 12.02 and 12.04 are not satisfied because there is no evidence of record to support repeated episodes of decompensation, each of extended duration; a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. The "paragraph C" criteria of section 12.06 are not satisfied because there is no evidence of record to support a finding that the claimant's impairment results in a complete inability to function independently outside the area of one's home...

At the hearing, the claimant's attorney argued that listing 12.05C was met. However, there is no evidence of adaptive functioning during the developmental period (prior to age 22). Although she attended special education classes, she was able to graduate. In addition, she was able to obtain her drivers' license, albeit the test had to be read to her. Furthermore, she is the primary caretaker for her two small children. The evidence supports a finding that the claimant does have some deficits in intelligence, but which are properly evaluated under listing 12.02.

(Tr. 47-48).

Plaintiff argues that Listing 12.05C for "intellectual disability"[1] is met and substantial evidence in the record supports such a finding (DN 12, Plaintiff's Fact and Law Summary at Page 2). In opposition, the Commissioner argues that Plaintiff has failed to prove her impairments

---

[1] Effective September 3, 2013, the Commissioner replaced the term "mental retardation" in Listing 12.05 with "intellectual disability." *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed.Reg. 46499-01 (codified at 20 C.F.R. Parts 404 and 416). This change reflects the widespread adoption of the term "intellectual disability" by Congress, government agencies, and various public an private organizations. Id. Moreover, "[a]dvocates for individuals with intellectual disability have rightfully asserted that the term 'mental retardation' has negative connotations, has become offensive to many people, and often results in misunderstandings about the nature of the disorder and those who have it." Id.

satisfied all of the criteria in the diagnostic description of "intellectual disability" in Listing 12.05 (DN 13, Commissioner's Fact and Law Summary at Page 5).

According to Listing 12.05, "intellectual disability" refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404. SubPart P, Appendix 1, § 12.05. The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraph A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders [the Commissioner] consider[s] severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, [the Commissioner] will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00A.

The required level of severity for "intellectual disability" is met when the requirements in

A, B, C, or D are satisfied:

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;
OR

C. **A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function**;
OR

D. A valid verbal, performance or full scale IQ of 60 through 70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(A)-(D).

In essence, to prove that his impairment meets subsection C of Listing 12.05, for "intellectual disability," Plaintiff must show that she had: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning prior to age twenty-two; (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) another physical or mental impairment imposing and additional and significant work-related limitation or function. *See* Peterson v. Comm'r of Soc. Sec., 2014 WL 223655, 6 (6ᵗʰ Cir. 2014) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1, §

12.00A, 12.05(C); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530-32 (1990); <u>Foster v. Halter</u>, 279 F.3d 348, (6th Cir. 2001)).


*IQ Scores*

Here, Plaintiff first argues that she meets the requirements of Listing 12.05(C), because her IQ scores were within the range of 60 and 70, as set forth under the requirements (DN 12, Plaintiff's Fact and Law Summary at Pages 2-3). School records from Butler County Middle School indicate that the Wechsler Intelligence Scale for children–Third Edition was administered to Plaintiff on November 7, 2002 (Tr. 171, 173). Accordingly, Plaintiff had a verbal IQ score of 69, performance IQ of 69, and a full scale IQ of 66 (Tr. 173). Furthermore, in his assessment on March 20, 2010, Dr. Cabezas indicated that Plaintiff had a verbal IQ of 69, performance IQ of 77, and a full scale IQ of 70 (Tr. 371). All IQ scores were measured before Plaintiff was 22 years old. In light of this evidence, it is clear that Plaintiff's IQ scores fall within the range of 60 and 70, as set forth under one of the additional requirements of Listing 12.05C. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.05(C). While the Plaintiff has met her burden in satisfying this requirement of Listing 12.05, the analysis must turn to the introductory paragraph of the particular listing.


*Adaptive Functioning*

In addition to the requisite IQ score, Plaintiff must also demonstrate subaverage general intellectual functioning with deficits in adaptive functioning which manifested prior to age 22 as specified in the diagnostic description of Listing 12.05. Here, the parties dispute the ALJ's finding that the evidence failed to establish deficits in adaptive functioning.

10

Plaintiff argues that she had significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (DN 12, Plaintiff's Fact and Law Summary at Page 2). In support of her position, Plaintiff points to the Multi-Disciplinary Assessment Report (Tr. 171-177) conducted by Butler County Middle School due to Plaintiff's poor academic performance in the seventh grade (DN 12, Plaintiff's Fact and Law Summary at Pages 3-4). As described in the report, the test measures four different areas of functioning which include motor skills, social interaction and communication, personal living skills, and community living skills (Tr. 171-177). In the report, the school counselor indicated that Plaintiff's functional independence is limited and her overall performance was comparable to that of the average individual at age 9 years 2 months (Tr. 175-176). More specifically, the school counsel noted as follows:

> When compared to others at her age level, Jade's academic skills, her ability to apply these skills, and her fluency with academic tasks are all within the low range. Jade's performance is low average in math calculation skills and written expression, and low in basic reading skills, reading comprehension, math reasoning, and basic writing skills.

(Tr. 175).

Furthermore, Plaintiff argues that the March 30, 2010 consultative examination with Craig Cabezas, Ph.D., confirmed deficits in adaptive functioning as required by the introductory paragraph of Listing 12.05 (DN 12, Plaintiff's Fact and Law Summary at Pages 4-5). Plaintiff points out that Dr. Cabezas assessed her reading at the first percentile, spelling at less than the first percentile, and arithmetic at the third percentile (DN 12, Plaintiff's Fact and Law Summary at Page 4; Tr. 372).

To be more specific, in his assessment, Dr. Cabezas provided the following summary:

> The claimant's testing results reveal a **low borderline intelligence** and **extremely limited reading and writing skills**. Her personality assessment results indicated a significant endorsement of symptoms of depression and some symptoms of anxiety. During the clinical interview, the claimant emphasized symptoms relating to social phobia with concerns about being judged and evaluated by others in the public. In this meeting, the claimant was nervous and tense, but nonetheless fully cooperative.

> The claimant's ability to understand instructions in work circumstances would be primarily limited to verbal instructions and in addition, her measured vocabulary skills are well below average. Her ability to concentrate and focus in public settings would likely be **moderately impaired** due to her acknowledged social fears. Her ability to work with others publicly would likely be **moderately impaired**. The claimant readily admitted to feeling very self-conscious around others in public along with feelings of inferiority. The claimant's stress management skills appeared to be **moderately impaired**.

(Tr. 372) (emphasis added).

In opposition, the Commissioner argues that Plaintiff has failed to satisfy the diagnostic description of Listing 12.05 and therefore, the ALJ was not even required to consider the requirements under 12.05, in particular under paragraph C (DN 13, Commissioner's Fact and Law Summary at Page 6). More specifically, the Commissioner asserts that Plaintiff's educational history and activities of daily living do not support a finding that she had deficits in adaptive functioning prior to age 22 (DN 13, Commissioner's Fact and Law Summary at Page 6).

In order to fully analyze these arguments, it is imperative to come up with a definition for "subaverage general intellectual functioning with deficits in adaptive functioning." The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills. Hayes v. Comm'r of Soc. Sec., 357 Fed.Appx. 672, 677 (6th Cir. 2009)

12

(*citing* Heller v. Doe, 509 U.S. 312, 329 (1993). In addition, "[a] loss of adaptive functioning is 'manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.'" Chaffin v. Colvin, 2014 WL 1317648, *6 (M.D. Tenn. 2014) (*citing* Burns v. Comm'r of Soc. Sec., 2011 WL 7568592, *6 (E.D. Tenn. 2011); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(4)). "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." West v.Comm'r of Soc. Sec. Admin., 240 F.App'x. 692, 698 (6th Cir. 2007). According to the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, adaptive functioning in relation to intellectual disability is explained as follows:

> Intellectual disability (intellectual development disorder) is characterized by deficits in general mental abilities, such as reasoning, problem solving, planning, abstract thinking, judgment, academic learning, and learning from experience. The deficits result in impairments of adaptive functioning, such that the individual fails to meet standards of personal independence and social responsibility in one or more aspects of daily life, including communication, social participation, academic or occupational functioning, and personal independence at home or in community settings.

5th ed. at p. 31.

With regard to Listing 12.05, the ALJ concluded as follows:

> At the hearing, the claimant's attorney argued that listing 12.05C was met. However, there is no evidence of adaptive functioning during the developmental period (prior to age 22). Although she attended special education classes, she was able to graduate. In addition, she was able to obtain her drivers' license, albeit the test had to be read to her. Furthermore, she is the primary caretaker for her two small children. The evidence supports a finding that the claimant does have some deficits in intelligence, but which are properly evaluated under listing 12.02.

(Tr. 48).

While Plaintiff claims that the evidence from the school records and Dr. Cabezas' assessment supports a finding that she had "subaverage intellectual functioning," even if substantial evidence supports Plaintiff's position, the undersigned cannot overturn the ALJ's decision "so long as substantial evidence also supports the conclusion." As expressed by the ALJ, Plaintiff was able to graduate from high school; she obtained her drivers' license; and she is the primary caretaker for her two small children (Tr. 48). In light of the case law explained above, Plaintiff's social skills and daily living activities are not so impaired as to rise to the level of "deficits in adaptive" functioning. While the ALJ's explanation under Finding No. 3 is minimal, it nevertheless meets the low threshold of substantial evidence and the undersigned will refrain from second-guessing the ALJ's decision.

Moreover, none of the medical sources in the record concluded that Plaintiff suffered from "significantly subaverage general intellectual function" or "deficits in adaptive functioning." While Dr. Cabezas indicated that Plaintiff suffered from "low borderline intelligence," this is not enough to meet the standard required by the introductory paragraph of Listing 12.05. In her evaluation with Dr. Cabezas, Plaintiff reported that she spends time with family, talks to her friends on the phone, takes care of her daughter by feeding her and changing her diapers, watches television, plays games, and uses the Internet (Tr. 371). In addition, Plaintiff stated that she contributes with house chores like making meals, doing laundry, general cleaning, sweeping floors, vacuuming carpets, taking out the trash, and taking care of pets (Tr. 371). Contrary to Plaintiff's assertion, there is no evidence of significant deficits in adaptive functioning in Dr. Cabezas' evaluation. Based on this evidence, Plaintiff has failed to prove that she suffers difficulties in daily living and social skills, as required to meet the standard of "deficits in adaptive functioning."

## Residual Functional Capacity

Next, Plaintiff challenges the ALJ's Finding No. 4, which addresses the fifth step of the five step sequential evaluation process promulgated by the Commissioner (DN 12, Plaintiff's Fact and Law Summary at Pages 7-8). More specifically, Plaintiff argues that the ALJ's residual functional capacity determination under Finding No. 4 is not supported by substantial evidence and does not comport with applicable law (DN 12, Plaintiff's Fact and Law Summary at Pages 7-8).

Finding No. 5 pertains to the fourth step in the sequential evaluation process. At that step, the Administrative Law Judge makes findings regarding the claimant's residual functional capacity. 20 C.F.R. §§ 416.920(a)(4)(v). The residual functional capacity is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his physical and mental limitations. Id. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what the claimant can do despite limitations caused by his physical and mental impairments. Id.; Social Security Ruling 96-5p; Social Security Ruling 96-7p. Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider the subjective allegations of the claimant and make credibility findings. Id.

Here, the ALJ made the following residual functional capacity determination under Finding No. 4:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to simple, repetitive work (no detailed or complex work), which is thing-oriented. She can have no more than occasional, intermittent contact with co-workers and supervisors, but no contact with the

> public. Instructions should be given verbally. She should avoid fast
> paced or quota based work.

(Tr. 48). In challenging the ALJ's Finding No. 4, Plaintiff argues that the ALJ erred by affording

great weight to the opinion of Dr. Cabezas (DN 12, Plaintiffs Fact and Law Summary at Pages 7-8).

More specifically, Plaintiff argues that the ALJ ignored Dr. Cabezas' Global Assessment of

Functioning ("GAF")[2] rating of 50[3] (DN 12, Plaintiff's Fact and Law Summary at Page 8; Tr. 373).

In opposition, the Commissioner maintains that a GAF rating of 50 does not preclude Plaintiff from

having the mental capacity to hold at least some jobs in the national economy (DN 13,

Commissioner's Fact and Law Summary at Page 8). The undersigned agrees with the

Commissioner.

The Sixth Circuit has held that "[w]hile a GAF score may of considerable help to the ALJ

in formulating the RFC, it is not essential to the RFC's accuracy." Howard v. Comm'r of Soc. Sec.,

276 F.3d 235, 241 (6th Cir. 2002). In that case, the Sixth Circuit noted that the ALJ's failure to

reference the GAF score in the residual functional capacity finding, standing alone, does not make

the residual functional capacity inaccurate. Id. GAF scores are a subjective rather than an objective

assessment and, as such, are not entitled to any particular weight. See Kornecky v. Comm'r of Soc.

Sec., 167 F.App'x 496, 511 (6th Cir. 2006). Because GAF scores are not entitled to any particular

deference, an ALJ should evaluate them as he would any other piece of opinion evidence. See Lamb

---

[2] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health issues. *See* DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL HEALTH DISORDERS 34 (American Psychiatric Association, 4th ed. 2000) [DSM-IV-TR].

[3] A GAF score between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." *See* DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL HEALTH DISORDERS 34 (American Psychiatric Association, 4th ed. 2000) [DSM-IV-TR].

v. Astrue, 2010 WL 2901756, *8 (E.D. Tenn. 2010) (*citing* Davis v. Chater, 1996 WL 732298 at *2 (6th Cir. 1996) (stating that it is well within an ALJ's discretion to disregard a GAF score based upon credibility determinations and a weighing of the evidence)). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental health status from 0 to 100, with lower scores indicating more severe mental limitations." White v. Comm'r of Soc. Sec., 572 F.3d 272, 276 (6th Cir. 2009). The Sixth Circuit has further explained the use of GAF scores in administrative proceedings as follows:

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning. Furthermore, the Commissioner has "declined to endorse the [GAF] score for use in the Social Security and SSI disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings."

DeBoard v. Comm'r of Soc. Sec., 211 F.App'x. 411 (6th Cir. 2006) (internal quotations omitted) (affirming ALJ's decision denying benefits where treating physician assessed the claimant a GAF score of 50). As a side note, the undersigned points out that Plaintiff's reference to GAF scores comes from a superseded edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM), Fourth Edition, DSM-IV, but the most recent version of the DSM does not include a GAF rating for assessment of mental disorders. DSM-V 16-17 (5th ed. 2013). *See* Bryce v. Comm'r of Soc. Sec., 1328277, *10 (E.D. Mich. 2014).

While the ALJ noted many, but not all of the GAFs, this does not constitute error. For instance, the ALJ considered the GAF score of 45 assessed upon Plaintiff's admission to Owensboro Medical Health Symstem (Tr. 50). The ALJ also considered Plaintiff's GAF score of 50 upon

admittance to the hospital on November 5, 2010 (Tr. 51).  Indeed, the ALJ considered the record as a whole and considered evidence from all stages of Plaintiff's treatment and applied a comprehensive analysis of her condition (Tr. 48-53).  Although the ALJ did not mention each GAF score in the record, in particular the GAF score of 50 assessed by Dr. Cabezas, there was no requirement to do so.  "Any failure to reference Global Assessment Functioning scores or to compare different scores attributed to the same subject, without more, does not require reversal."  DeBoard, *supra*, 211 F.App'x at 416.  Furthermore, "it is well settled that: '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" Kornecky, *supra*, 167 F.App'x at 507 (internal citation omitted).  "The fundamental question ... is whether the ALJ's decision is supported by substantial evidence."  Dykes ex rel. Brymer v. Barnhart, 112 F.App'x 463, 468 (6th Cir. 2004).  Here, there is sufficient evidence to demonstrate that the GAF rating of 50 does not accurately reflect Plaintiff's residual functional capacity.  The ALJ considered the evidence as a whole, including testimony from the administrative hearing, school records, and Dr. Cabezas' assessment (Tr. 47-53).  In light of this evidence, the ALJ found that Plaintiff engaged in social and daily activities, inconsistent with a GAF score of 50.  Because the ALJ's residual functional capacity determination is supported by substantial evidence, the ALJ's failure to address Dr. Cabezas's GAF rating of 50 is harmless.  *See* Id., 112 F.App'x at 468.

Next, Plaintiff argues that "it would be improper to rely on the assessments of the State agency psychologists in this case" (DN 12, Plaintiff's Fact and Law Summary at Page 8).  Plaintiff points out that these state agency psychologists did not review significant medical evidence of record including records of psychiatric hospitalization in June 2010 and November 2010 (DN 12,

Plaintiff's Fact and Law Summary at Page 8). In opposition, the Commissioner argues that the ALJ properly considered the assessments of the state agency psychologists and the ALJ found Plaintiff's residual functional capacity was more limited than assessed by these state agency psychologists (DN 13, Commissioner's Fact and Law Summary at Pages 8-9).

Here, Mary Thompson, Ph.D., and Laura Cutler, Ph.D, the non-examining state agency psychologists reviewed the objective evidence and information supplied by Plaintiff in forms and questionnaires (Tr. 52-53). The ALJ summarized the assessments of these state agency psychologists as follows:

> Dr. Thompson and Dr. Cutler opined the claimant has borderline intellectual functioning, evaluated under listing 12.02; a depressive disorder, evaluated under listing 12.04; and an anxiety disorder with features of posttraumatic stress disorder and social anxiety, evaluated under listing 12.06. When rated under the "B" criteria, they opined the claimant has "mild" restriction of activities of daily living; "moderate" difficulty with social functioning; and "moderate" difficulty with concentration, persistence, or pace. They opined she has never had an episode of decompensation, of extended duration, and the "C" criteria is not met. They both agreed that while the claimant has some limitations, she is able to understand and remember simple instructions and procedures requiring brief initial learning periods and that can be modeled for her or presented verbally. They opined she could sustain concentration, effort and pace for simple tasks requiring little independent judgment and involving minimal variations, and doing so at requisite schedules of work and breaks. They opined she could interact frequently with supervisors and peers and sufficiently for task completion, yet requiring no more than occasional interaction with the public. Finally, they opined she can adapt adequately to situational conditions and changes with reasonable support and structure.

(Tr. 53).

State agency consultants are highly qualified specialists and are considered experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. See 20 C.F.R. § 416.927(e)(2); Social Security Ruling 96-6p,

1996 WL 374180 (July 2, 1996). Plaintiff argues that the ALJ improperly relied on the opinion of the state agency psychologists and that the evidence in the record documents more significant mental limitations than found by the state agency psychologists (DN 12, Plaintiff's Fact and Law Summary at Page 8). However, Plaintiff realizes that the ALJ afforded little weight to the opinions of the state agency psychologists. Even though Drs. Thompson and Cutler did not review all of the evidence in the record, in particular the school records from Butler County, their findings regarding Plaintiff's limitations are supported by medical evidence and consistent with the record as a whole. *See* 20 C.F.R. § 416.927(e)(2). More importantly, the ALJ gave Plaintiff "some benefit of the doubt" and issued a residual functional capacity that is more limited then assessed by Drs. Thompson and Cutler (Tr. 53). Because it appears that the ALJ gave little weight to the opinions of Drs. Thompson and Cutler, Plaintiff's argument is without merit.

### Other Work in the National Economy

Plaintiff also challenges the ALJ's Finding No. 9, which is the fifth step in the five-step sequential evaluation process promulgated by the Commissioner (DN 12, Plaintiff's Fact and Law Summary at Page 9). More specifically, she argues that Finding No. 9 is not supported by substantial evidence because of the "[i]dentification of jobs to a flawed hypothetical question" (DN 12, Plaintiff's Fact and Law Summary at Page 9). While Plaintiff does not elaborate her argument, it appears that she is challenging the ALJ's finding based on his disagreement with the residual functional capacity finding at the fourth step (DN 12, Plaintiff's Fact and Law Summary at Page 9).

Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that there are jobs that exist in significant numbers in the national economy that

Plaintiff can perform (Tr. 53-54). Moreover, the ALJ adopted the findings of the vocational expert that Plaintiff would be able to perform the requirements of representative unskilled occupations at the medium exertional level such as wall cleaning positions; floor waxer positions; and industrial cleaner positions (Tr. 54). Here, there is no merit to Plaintiff's argument. The vocational expert's testimony was based on a hypothetical question that accurately portrayed the Plaintiff's physical and mental impairments (Tr. 77-78). Therefore, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that Plaintiff is capable of performing a significant number of jobs existing in the national economy. Bradford v. Sec'y of Dep't of Health and Human Servs., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam); Varley v. Sec'y of Health and Human Servs., 820 F.2d 777, 779 (6th Cir. 1987). In sum, the ALJ's Finding No. 9 is supported by substantial evidence and comports with applicable law.

## General Disability Finding

Lastly, with regard to Finding No. 10, Plaintiff makes a broad challenge to the ALJ's ruling that Plaintiff has not been under a disability, as defined in the Social Security Act, from November 17, 2009 through November 3, 2011 (DN 12, Plaintiff's Fact and Law Summary at Page 9). Based on the analysis the Court has set forth with regard to Finding Nos. 3, 4, and 9, the ALJ did not err in finding that Plaintiff has not been under a disability since November 17, 2009. Because the Court concludes that Plaintiff's challenge to Finding Nos. 3, 4, and 9 fails, Plaintiff's argument with regard to Finding No. 10 holds no merit. In sum, the Court has reviewed the record and finds that the ALJ's determinations under Finding Nos. 3, 4, 9 and 10 are supported by substantial evidence in the record and fully comport with applicable law.

## ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**, pursuant to 42 U.S.C. § 405(g).

This is a final and appealable Order and there is no just cause for delay.

Copies:      Counsel